# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2023 WY 41

*April Term, A.D. 2023*

**May 3, 2023**

<table>
<tr><td>

**BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR,**

**Petitioner,**

**v.**

**HAMPTON M. YOUNG, WSB #6-3672,**

**Respondent.**

</td><td>

D-21-0004

</td></tr>
</table>

## ORDER REINSTATING ATTORNEY TO THE PRACTICE OF LAW

[¶1]   **This matter** came before the Court upon a Report and Recommendation for Reinstatement filed herein April 13, 2023, by a panel of the Board of Professional Responsibility for the Wyoming State Bar, pursuant to a stipulation under Rule 22(b)(6)(B) of the Wyoming Rules of Disciplinary Procedure.  By order entered February 2, 2022, this Court suspended Respondent from the practice of law for one year, with the period of suspension to begin February 4, 2022.  *Bd. of Pro. Resp., Wyoming State Bar v. Young*, 2022 WY 20, 503 P.3d 80 (Wyo. 2022).  Respondent timely sought reinstatement.  Now, after a careful review of the Board of Professional Responsibility's Report and Recommendation for Reinstatement and the file, this Court finds that the Report and Recommendation should be approved, confirmed and adopted by the Court; and that the Respondent Hampton M. Young should be reinstated to the practice of law.  It is, therefore,

[¶2]   **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Reinstatement, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed and adopted by this Court; and it is further

[¶3]   **ADJUDGED AND ORDERED** that the Respondent, Hampton M. Young, be, and hereby is, reinstated to the practice of law in Wyoming, effective immediately; and it is further

[¶4]  **ORDERED** that, pursuant to Rule 9(b) Wyoming Rules of Disciplinary Procedure, this Order Reinstating Attorney to the Practice of Law, along with the incorporated Report and Recommendation for Reinstatement, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶5]  **ORDERED** that the Clerk of this Court shall docket this Order Reinstating Attorney to the Practice of Law, along with the incorporated Report and Recommendation for Reinstatement, as a matter coming regularly before this Court as a public record; and it is further

[¶6]  **ORDERED** that the Clerk of this Court transmit a copy of this Order Reinstating Attorney to the Practice of Law to the members of the Board of Professional Responsibility and to the clerks of the appropriate courts of the State of Wyoming.

[¶7]  **DATED** this 3rd day of May, 2023.

<div style="margin-left:50%">

**BY THE COURT:**

/s/

**KATE M. FOX**
**Chief Justice**

</div>

**BEFORE THE SUPREME COURT**

**STATE OF WYOMING**

*In the matter of*           )
*HAMPTON M. YOUNG*     )       *WSC No. D-21-0004*
*WSB # 6-3672,*           )       *WSB No. 2021-004*
                   )
*Respondent.*            )

---

## REPORT AND RECOMMENDATION FOR REINSTATEMENT

---

THIS MATTER came before a Review Panel ("Panel") of the Board of Professional Responsibility ("BPR") on the 21st day of March, 2023, for consideration of the Stipulation for Reinstatement ("Stipulation") filed herein on the 14th day of March, 2023. Present for the hearing held via Zoom were Panel members Christopher H. Hawks (chair), Robert C. Jarosh and Brett McPeak (nonlawyer member). Melinda S. McCorkle, Deputy Bar Counsel, was present as was Respondent, Hampton M. Young. The Panel, having reviewed the Stipulation, Mr. Young's Affidavit ("Affidavit"), having had the opportunity to ask questions of Deputy Bar Counsel and Mr. Young, and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows:

### Findings of Fact

1. Respondent Hampton M. Young was admitted to the Wyoming State Bar in 2005. Until 2021, Mr. Young maintained an active practice of law in Casper, Wyoming. On February 2, 2022, Mr. Young's Wyoming license was suspended effective February 4, 2022.

2. Mr. Young was licensed to practice law in Nevada in 1978. On June 22, 2022, the Supreme Court of Nevada imposed reciprocal discipline against Mr. Young; accordingly, Mr. Young's Nevada license was suspended for one year from the date of the Nevada Order.

1

3. Mr. Young's disciplinary history includes a public censure in 2004 and a private reprimand in 2019.

4. In 2020, the trial of Mr. Young's divorce from his wife was held before the Honorable Dawnessa Snyder, Second Judicial District. During the trial, Mr. Young's legal assistant, Natelina Benson, testified regarding various matters including Mr. Young's law office trust account.

5. In January 2021, Judge Snyder reported her concerns about apparently improper disbursements from the trust account to the Office of Bar Counsel (OBC). Improper transactions identified by Judge Snyder included several disbursements from the trust account to Benson directly.

6. Mr. Young was sent a letter of inquiry from the OBC dated January 25, 2021, which enclosed Judge Snyder's report and inquired into possible violations of Rule 1.15 (law office trust account) and Rule 5.3 (failure to adequately supervise nonlawyer assistant). The letter asked Mr. Young to produce all records required by Rule 1.15(g) for the period 2016 to present.

7. Mr. Young did not fully or timely cooperate with the OBC's request. Mr. Young requested and was granted several extensions; even so, Mr. Young failed to meet deadlines and failed to produce documents requested by the OBC. Due to concerns about Mr. Young's inability to produce the records required by Rule 1.15(g) and the fact that Mr. Young had clearly commingled client trust funds with funds held in his operating account over an extended period of time, Deputy Bar Counsel petitioned the Wyoming Supreme Court for Mr. Young's immediate suspension pursuant to Rule 17, W.R.Disc.P. On June 22, 2021, the Court issued an order denying the petition for immediate suspension.

8. Over the next few weeks, the OBC obtained additional bank records and other documents pertaining to the investigation. One of the matters of inquiry related to a probate matter (hereinafter "Estate") filed by Mr. Young on September 1, 2016, for which Benson was appointed personal representative on December 1, 2017. Bank records revealed that the Estate checking account, which began with an opening balance of $89,905.25 on August 3, 2018, was depleted to a balance of $15,980.98 by October 31, 2018. Subsequent discovery confirmed that almost all withdrawals from the account were spent on Benson's personal shopping and very little was paid to or for the benefit of the beneficiary of the Estate, who was incarcerated at the time. Benson returned the client funds to the Estate checking account by embezzling additional funds from Mr. Young.

9. Bar Counsel deposed Mr. Young and Benson on August 9 and 10, 2021. Mr. Young attended portions of Benson's deposition and was unaware of Benson's theft of funds from the Estate until that time.

10. Also during Benson's deposition, Mr. Young learned for the first time that Benson had made additional, improper and unauthorized withdrawals of tens of thousands of dollars from Mr. Young's operating and trust accounts. In addition to being Mr. Young's legal assistant, Benson was Mr. Young's bookkeeper and entered all transactions for his operating and trust accounts in Quickbooks. Many of the payments to Benson were booked into Quickbooks as "loans" or "advances" which Benson, without Mr. Young's authorization, wrote off at the end of a given year, hence forgiving the debt. As one example, Benson took $21,000.00 in "advances" from Mr. Young's operating account in November 2018. She took almost $11,000.00 in advances during August 2019. Mr. Young also learned during Benson's deposition that she had failed to pay federal payroll taxes on paychecks she received from Mr. Young, resulting in an IRS lien on Mr. Young's

3

accounts. On occasion, Benson wrote herself paychecks out of Mr. Young's trust account. At the conclusion of her deposition, Benson admitted that the money she had taken out of Mr. Young's practice the last few years dwarfed Mr. Young's income from the practice.

11.     Following these revelations during Benson's deposition, at OBC's insistence Mr. Young secured all checks, all deposit slips, and changed the password on his operating and trust accounts. Mr. Young removed Benson from any bookkeeping or other record-keeping duties regarding Mr. Young's finances as well as his trust account.[1] Mr. Young took immediate steps to ensure Benson no longer came into possession of client funds or payments received from clients. Mr. Young took away Benson's key to his post office box and took steps to assure that all mail delivered to his office was opened by Mr. Young and not by Benson.

12.     On February 9, 2022, Benson was arrested and charged with theft in violation of and contrary to Wyoming Statute Section 6-3-402. Benson pled guilty to the crime and was sentenced to supervised probation on October 13, 2022.

13.     Fortunately, as best Mr. Young and OBC can determine, Mr. Young was the only victim of Benson's fraud. Though review of bank statements for Mr. Young's operating and trust accounts shows that the two accounts were hopelessly commingled with little separation between the accounts, there is no evidence that any client was harmed by Benson's numerous defalcations. Mr. Young acknowledges that Benson's theft from the Estate was harmful to the client but the client was made whole, albeit it through additional theft from Mr. Young by Benson.

---

[1] Benson remained Mr. Young's employee while he closed his law office. Mr. Young asserted, and the Office of Bar Counsel conceded, that Mr. Young required assistance to close his firm and that Benson was the individual most able to effectively and efficiently assist him for a short period of time in order to wrap up Mr. Young's practice.

4

14. During the disciplinary proceedings, Mr. Young acknowledged that he committed gross violations of Rule 1.15 (safekeeping property belonging to clients or others) and Rule 5.3 (oversight of nonlawyer assistance).

15. Mr. Young's stipulation for order of one-year suspension and supporting affidavit were presented to and approved by the Board of Professional Responsibility (BPR). On January 24, 2022, the BPR submitted a report and recommendation for Mr. Young's one-year suspension to the Court.

16. On February 2, 2022, the Court issued an order of Mr. Young's one-year suspension effective February 4, 2022. Pursuant to Rule 22(b)(1), W.R.Disc.P, Mr. Young was required to wait until ninety days prior to the effective date of suspension before filing a petition for reinstatement.

17. On March 3, 2023, Mr. Young filed a petition for reinstatement and paid the requisite fee.

18. Pursuant to Rule 22(b)(5), W.R.Disc.P, Mr. Young's petition for reinstatement was sent via certified mail and email to Judge Snyder on March 9, 2023. That same day, Judge Snyder notified Deputy Bar Counsel that she would not submit comments regarding reinstatement to the BPR.

### Measures taken by Mr. Young to prepare to return to practice

19. If granted the privilege to practice again, Mr. Young intends to seek employment in which he will not have trust account authority. If he is unable to find such employment, he may work as a solo practitioner and will comply with all ethical requirements including those applicable to lawyer trust accounts. In either event, Mr. Young has taken several measures to ensure that the issues that led to the suspension cannot occur again.

5

20. Mr. Young has taken several CLEs that focus on maintaining a small or solo practice and meant to address the issues that led to suspension: Best Practice for Attorneys to Run a Small Successful Firm; Unauthorized Practice of Law by Remote Attorneys; and Attorney Billing 101.

21. Mr. Young has also taken CLEs generally related to his practice, such as: Evidence: Hearsay, expert testimony, authentication, and ethics; The Ultimate IRS Offer-in-Compromise Workshop: From billing notice to acceptance letter; Firearms Law 101: Types of lawful firearms and individual prohibitions on gun ownership; Revocable Living Trusts from Start to Finish; Mini-Medical School for Lawyers: What attorneys should know about anatomy, physiology, and injuries and treatment in relation to the law; Microsoft Excel for Attorneys: Manage lists, track case data; and Microsoft Word for Attorneys: Number paragraphs, use styles, insert table of contents, create templates, and more.

22. Mr. Young intends to institute several measures to ensure that his law office's financial management system is beyond reproach:

a. Mr. Young previously had a signature stamp created while he was undergoing cancer treatment. Benson used this signature stamp as a means to embezzle funds, which in turn, could have negatively impacted clients and did impact the commingling of funds in the trust account. Mr. Young has destroyed the signature stamp and it will not be remade.

b. Only Mr. Young will have the ability to make deposits to or withdrawals from his financial accounts.

c. Only Mr. Young will have access to his trust account and the ability to issue checks on the trust account.

6

d.      Mr. Young will balance his bank accounts monthly to ensure that anomalies do not occur and if they do, are addressed immediately.

e.      Mr. Young's trust account will be reviewed by an outside accountant on an annual basis.

23.     Mr. Young is presently living in Oregon and has no intention of returning to Wyoming. If granted licensure, it is possible he would have a limited practice in Wyoming. However, Mr. Young's plan is to seek licensure in Oregon, which he recognizes may be difficult because of the suspension.

### Mr. Young's remorse and accountability over the conduct leading to his suspension

24.     Mr. Young was a victim of embezzlement by a trusted employee who he viewed as family. Benson stole tens of thousands of dollars from Mr. Young. Rather than simply play the victim, Mr. Young takes responsibility for violating Rules 1.15 and 5.3:

> An attorney's obligations are many, weighty and stress inducing. Now and then the only thanks is the pride of having done the best job possible. Respondent knows how while trying not to second guess oneself too much. Respondent has always tried to do his best. In this matter, however, it is clear Respondent breached his duty to adequately supervise and monitor his trust account which regrettably resulted in trust fund embezzlement by his office manager. Nothing to second guess here. Respondent took his eye off the ball. Respondent did not do his best.

25.     Mr. Young acknowledges that clients could have been harmed by the commingling of the trust account and Benson's theft from his bank accounts. Luckily, this did not occur. Mr. Young acknowledges that Benson's theft from the Estate was harmful to the client; luckily, the client was made whole, albeit through additional theft from Mr. Young by Benson.

### Mr. Young has met the requirements for reinstatement

26.     Mr. Young asserts, and Deputy Bar Counsel concurs, that Mr. Young has met the requirements for reinstatement set forth in Rule 22(b)(4), W.R.Disc.P.:

7

The attorney seeking reinstatement must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of these rules, has not engaged in the unauthorized practice of law, and is fit to practice law.

27. Mr. Young has complied with all requirements of the Court's order of one-year suspension. Mr. Young is current on license fees and continuing legal education. He has made a compelling case for rehabilitation from the issues that led to his disbarment.

28. The Panel Finds, by clear and convincing evidence, that Mr. Young has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of these rules, has not engaged in the unauthorized practice of law, and is fit to practice law. The Panel finds, by clear and convincing evidence, that Mr. Young has taken actions to ensure the conduct that led to the suspension cannot reoccur and has identified measures that will be taken if Mr. Young returns to private practice.

## Conclusions of Law

29. Proceedings for reinstatement of a lawyer following disciplinary action are governed by Rule 22(b), W.R.Disc.P., which provides in pertinent part:

(b) *Reinstatement after disbarment or suspension for more than six months.* An attorney who has been disbarred or suspended for a period of greater than six (6) months may seek to return to active status by filing a verified petition for reinstatement with the BPR and serving a copy on Bar Counsel.

(1) A disbarred attorney may not file a verified petition for reinstatement until five years after the effective date of the order of disbarment.

(A) Concurrent with the filing of a verified petition for reinstatement, a disbarred attorney shall submit a written request for preparation of a character report to the National Conference of Bar Examiners and shall pay the requisite fee for such report. A copy of the request shall be attached to the verified petition for reinstatement.

(B) A fee of one thousand dollars ($1,000.00) shall accompany the filing of a verified petition for reinstatement by a disbarred attorney.

8

(2) An attorney who has been suspended for a period of greater than six (6) months may file a verified petition for reinstatement no sooner than ninety (90) days prior to the expiration of the period specified in the order of suspension unless another period is specified in the order. A fee of five hundred dollars ($500.00) shall accompany the filing of a verified petition for reinstatement by a suspended attorney.

(3) The verified petition for reinstatement shall set forth the facts other than passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Wyoming State Bar, fully considering the previous disciplinary action taken against the attorney, and shall include certification that:

   (A) The attorney is current on the payment of annual license fees and any late charges;

   (B) The attorney has complied with all continuing legal education requirements during the disciplinary period and has paid all necessary fees;

   (C) Restitution has been made as ordered to any persons and the Client Protection Fund, including the source and amount of funds used to make restitution; and

   (D) The attorney has complied with all requirements of the Court's disciplinary order.

(4) The attorney seeking reinstatement must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of these rules, has not engaged in the unauthorized practice of law, and is fit to practice law.

(5) A copy of the verified petition for reinstatement shall be served upon all complainants in the underlying disciplinary proceedings, who shall have thirty (30) days to submit their written comments to the BPR.

(6) *Reinstatement proceedings following disciplinary suspension or disbarment.*

   (A) Immediately upon receipt of a verified petition for reinstatement, Bar Counsel shall conduct any investigation Bar Counsel deems necessary. The petitioner shall cooperate in any such investigation.

9

(B) Following investigation, Bar Counsel and the attorney may stipulate to reinstatement by submitting to the BPR a written stipulation and affidavit of the attorney which provides a detailed description of the factual basis for compliance with the requirements for reinstatement. Any such stipulation shall be approved or disapproved by a Review Panel. If the stipulation is approved, a report and recommendation shall be transmitted to the Court. If accepted by the Court, the Court shall issue its order stating that the attorney is reinstated to the practice of law, which may include any conditions the Court deems appropriate.

(C) If Bar Counsel and the attorney do not reach a stipulation for the attorney's reinstatement within 60 days of the filing of the verified petition for reinstatement and, if applicable, receipt of the character report of the National Conference of Bar Examiners, Bar Counsel shall file an answer to the petition. Thereafter, the petition for reinstatement shall proceed to a hearing before the Hearing Panel as provided in Rule 15.

(D) In deciding whether to recommend reinstatement, the Hearing Panel shall consider the attorney's past disciplinary record. The Hearing Panel may condition a recommendation for reinstatement upon compliance with any additional requirements it deems appropriate, including but not limited to the payment of restitution to any person harmed by the misconduct for which the petitioner was suspended.

### Recommendation

In consideration of the foregoing Findings of Fact and Conclusions of Law, the Panel recommends that the Court issue an Order of Reinstatement of Respondent, Hampton M. Young, as an active member in good standing of the Wyoming State Bar.

DATED this _____7th_____ day of ~~March~~ April, 2023.

Christopher H. Hawks, Chair
Review Panel of the Board of Professional
Responsibility
Wyoming State Bar

10